UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


THE AFFILIATED CONSTRUCTION TRADES
FOUNDATION, a division of the
West Virginia State Building and
Construction Trades Council, AFL-CIO

     Plaintiff

v.                            Civil Action No.: 2:04-1344

THE WEST VIRGINIA DEPARTMENT OF
TRANSPORTATION, Division of Highways;
THE UNITED STATES DEPARTMENT OF
TRANSPORTATION; THE WEST VIRGINIA
BOARD OF EDUCATION; THE MINGO
COUNTY REDEVELOPMENT AUTHORITY;
and NICEWONDER CONTRACTING, INC.

     Defendants


MEMORANDUM OPINION AND ORDER


      Pending before the court are the following motions: (1)

plaintiff's motion, filed May 1, 2006, seeking summary judgment

as to defendants the West Virginia Department of Transportation

Division of Highways and Nicewonder Contracting, Inc.; (2)

plaintiff's motion, filed June 8, 2006, seeking summary judgment

as to defendant United States Department of Transportation; and

(3) the motion of the United States Department of Transportation,

filed July 10, 2006, seeking summary judgment.


1

I.

This case arises out of the construction of a portion
of the King Coal Highway ("the highway" or "KCH"), an
approximately 93-mile section of the I-73/74 Corridor that runs
through southern West Virginia.  (Administrative Record 56 at
705.) (hereinafter "AR ___ [document number] at ___[page
number]").

A.   The Three-Mile Section of the Highway

In early 2003, the West Virginia Department of
Transportation, Division of Highways ("WVDOH") was approached by
a local coal operator, Premium Energy, that was performing
surface coal mining operations in an area in which the highway
was to be constructed.  (AR 56 at 707.)  Prior to this time,
Premium Energy had sought a Section 404, Clean Water Act permit
for placement of the excess mining material; however, this permit
could not be issued absent a documented post-mine use for the
land.  (Id.)  Premium Energy suggested to the WVDOH that the
excess mine material be used for the construction of roadway
fills for the highway.  (Id.)  The WVDOH conferred with the
Federal Highway Administration ("FHWA") about this possibility.
(Id.)  Also, at some time in early 2003, the Mingo County

2

Redevelopment Authority ("Redevelopment Authority") expressed an interest in the post-mine use of certain land adjacent to the highway.  (Id.)

To make use of all the material generated from the surface mining operation, Premium Energy proposed to construct approximately three miles of the highway mainline and prepare a large, expansive area of flat land adjacent to the highway to be used for commercial development.  (Id.)  As funding became available, the highway right of way would be purchased by the WVDOH, and the adjacent commercial development site would be deeded at no cost to the Redevelopment Authority.  (Id.)

In late summer of 2003, representatives from the WVDOH and FHWA undertook a field review and concluded that the construction techniques proposed by Premium Energy were reasonable for the construction of fills for the highway.  (Id. at 708.)  Premium Energy's proposal was accepted, an amended Section 404 permit was issued to Premium Energy, and it began working on this portion of the highway and the commercial development site.  (Id.)

B.  The Eleven-Mile Red Jacket Section

In late 2003, expansion of this initial proposal was

3

contemplated.  (Id.)  After reviewing mining data, Premium Energy concluded that approximately eleven miles (the Red Jacket section) of the highway could be constructed using the same methodology as the previously approved three-mile section, if the WVDOH and the FHWA could partially fund some of the excavation cost.  (Id.)  Additional funding was necessary inasmuch as coal had previously been mined in this area and not enough coal was available to offset the cost of the project; however, it was possible that a joint development opportunity existed that would allow Premium Energy to mine the coal, while providing the necessary fills for the highway.  (Id.)  Again, large areas of flat land would be generated adjacent to the highway and the Redevelopment Authority indicated that the land could be used for businesses and schools.  (Id. at 709.)  The WVDOH and FHWA determined that further development of this proposal was warranted and gave Premium Energy the "go ahead" for the preparation of a proposal for this project. (Id.)  After determining the amount of coal that was available in the area, Premium Energy developed a cost proposal and submitted it to the WVDOH and FHWA for review.  (Id.)

C.  Proposal Review and Subsequent Agreement

        The WVDOH and FHWA reviewed the initial cost

4

information submitted by Premium Energy and concluded the
potential savings were "quite significant."  (Id. at 711.)  On
May 6, 2004, the WVDOH entered into an agreement with defendant
Nicewonder Contracting, Inc. ("Nicewonder"), an affiliated
company of Premium Energy.  (Agreement, attached as Ex. 1 to
Pl.'s Memo. in Supp. S.J. as to USDOT and Nicewonder.)

        Some of the more pertinent recitations in the agreement
provide

        WHEREAS certain sections, including four-lane
        sections and certain connector roads, of KCH's
        proposed Mingo County Route (hereinafter referred to
        as the "Red Jacket Project" or "Project" and whose
        geographical boundaries are depicted in Exhibit 1 of
        this Agreement), cross or are in the vicinity of lands
        and waters (hereinafter referred to as "Properties")
        controlled, through ownership, lease, or other legal
        means, by the Company [Nicewonder]; and . . .

        WHEREAS the Company has, or will obtain, rights
        to said Properties and other properties not controlled
        by the Company for the purpose of sourcing borrow
        material, providing for drainage ways, and
        constructing mitigation structures for the Red Jacket
        Project; and . . .

        WHEREAS the Company has identified coal reserves
        [] in the Red Jacket Project area that, although
        uneconomical to mine as a stand alone mining project,
        have a monetary value that can be used to offset some
        of the project's Construction costs; and . . .

        WHEREAS the Department and Company have entered
        into preliminary negotiations for the Construction of
        the Red Jacket Project;

        WHEREAS the Department and the Company considers

5

> [sic] it to be in the public interest to cooperate in
> accomplishing the above-mentioned work and enter into
> this Agreement to establish their respective
> responsibilities with regard to the Red Jacket Project
> . . .

(<u>Id.</u>)  Of most concern to the plaintiff, the contract

further provides that

> The proposed reimbursable costs, contained
> herein, for work to be performed on the three
> components of the Red Jacket Project and any
> additional amounts caused to be paid by an executed
> Supplemental Agreement are based on the Company's
> status as a "sole source" provider and <u>exempt from
> the requirements of the Davis-Bacon Act and Chapter
> 21, Article 5A of the West Virginia Code</u>.  Any
> amendments or changes to this Agreement, that may
> cause the Company [Nicewonder] to lose such status or
> exemptions, will require the parties to this
> Agreement to enter into a Supplemental Agreement.
> Acceptance of reasonable terms to be incorporated
> into the Supplemental Agreement, including any
> additional costs resulting from the loss of said
> exemptions required to compensate for cost impacts
> that may result from the loss of sole source provider
> status or exemption from the requirements of the
> Davis-Bacon Act and Chapter 21, Article 5A of the
> West Virginia Code, will not be unreasonably
> withheld.  Also, loss of such status and exemptions
> will not result in the voidance of this Agreement and
> will not require the Agreement to be competitively
> bid.

(<u>Id.</u> ¶ 10.) (emphasis supplied).

D.   <u>Decision Document and Public Interest Finding</u>

In June of 2004, WVDOH submitted the "King Coal

Highway Joint Development Project Decision Document" to the

6

FHWA. (AR 56 at 702-1033.)  This document provides the basis
for FHWA approval of the concept and future authorization of
federal monies.  (Id. at 711.)  The document contains a public
interest finding, portions of which are discussed at length in
plaintiff's briefing on the motions.  (Id. at 713.)

On June 24, 2004, the public interest finding was
submitted by the WVDOH to the FHWA. (Id. at 717.)  In the
finding WVDOH requests the FHWA approve the WVDOH's
determination that it is in the public interest to undertake
this Federal-aid construction project by negotiated contract
rather than competitive bidding.  (Id. at 716.)  According to
the WVDOH, this determination is supported by the finding that
(1) the use of the negotiated contract method will be "cost
effective" inasmuch as under the competitive bid process and
traditional highway construction process the estimated cost
would be $339.1 million, but under the negotiated contract with
Nicewonder the "high" estimated cost was only $169.1 million;
(2) the circumstances of this project are "unusual and unique"
insofar as it is the only time the WVDOH has requested
reimbursement for a negotiated contract; and (3) the project
was "unlikely to recur" in that many factors merged (such as
coal mine operation, acceptable fill construction techniques,

and marketable coal reserves) to make the project possible.
(<u>Id.</u> at 716.)

>   Additionally, the public interest finding states that
>
>   Similar to the procedures that are commonly used for
>   public utilities, state forces and railroads, the
>   contractor will be able to, under the terms of the
>   agreement, use their existing work force, following
>   any existing labor agreements.

(<u>Id.</u>)  On June 29, 2004, Mr. Thomas Smith, the Administrator for
the West Virginia Division of the FHWA approved the WVDOH's
request.

E.   <u>Institution of This Action and Procedural History</u>

>   On December 2, 2004, plaintiff, a labor organization
that represents construction workers, instituted this declaratory
judgment action in the Circuit Court of Kanawha County, West
Virginia against WVDOH and Nicewonder.  On December 27, 2004,
those defendants removed this action on the basis of federal
question jurisdiction.  On August 26, 2005, the court granted
plaintiff's request for leave to file a first amended petition
which named the United States Department of Transportation, the
West Virginia Board of Education, and the Redevelopment Authority
as additional defendants.

>   USDOT subsequently moved to dismiss the first amended

8

petition asserting that (1) the only action that could be maintained against it is one under the Administrative Procedures Act ("APA") and (2) it need not participate in discovery inasmuch as judicial review of a claim under the APA is limited to the administrative record.  Plaintiff responded seeking leave to amend its petition to assert a claim under the APA.  On April 26, 2006, the court ruled on the USDOT's motion, permitted plaintiff to amend its petition, directed the filing of the administrative record, stayed discovery in this action, and directed plaintiff to file a motion should it wish to engage in additional discovery beyond the administrative record.

On May 1, 2006, plaintiff filed its motion for summary judgment as to WVDOH and Nicewonder in which it requests "Summary Judgment for all Counts of the First Amended Complaint [sic, Petition] in this matter."  In later briefing, counsel for plaintiff, who practices in Morgantown, West Virginia, explains that plaintiff prematurely sought summary judgment on the First Amended Petition because he did not receive the court's April 26, 2006, order until after he had mailed the motion for summary judgment.  On May 8, 2006, plaintiff filed its second amended petition seeking a declaratory judgment under the laws of West Virginia and the

9

United States.[1]

In Count I of the second amended petition, plaintiff contends that WVDOH and Nicewonder, with or without the approval of USDOT and the Redevelopment Authority, entered into the agreement of May 6, 2004, to construct all or a portion of the highway that is not in the public interest in that it is not cost effective nor unusual and is likely to reoccur and therefore is in violation of state and federal laws.  (Sec. Am. Pet. ¶ 17.) Plaintiff asserts in Count II that "WVDOH and the USDOT by undertaking to enter into the [May 6, 2004] agreement made

---

[1] Both Nicewonder and the WVDOH contend that plaintiff's motion for summary judgment should be dismissed insofar as it seeks summary judgment on the first amended petition, which is no longer germane as it was rendered null by the filing of the second amended petition.  Both defendants, however, have responded in substance to the arguments advanced by plaintiff in the motion.  Moreover, in addition to observing that it did not receive the court's April 26, 2006, order until after the filing of its motion, plaintiff correctly observes that the counts contained in both the first and second amended petition are the same as to the WVDOH and Nicewonder and the second amended petition motion for summary judgment merely adds the APA claim against the USDOT.  Plaintiff further states that if it is required to file a renewed motion for summary judgment as to these defendants, the substance of the law it cites would remain unchanged.  No party maintains that additional discovery is needed prior to the court ruling on the pending motions.  In view of these facts, the court will not burden plaintiff with refiling what would in effect be a substantively identical motion and memorandum and will instead treat the arguments asserted in plaintiff's motion for summary judgment on the first amended petition as being addressed to the allegations contained in its second amended petition.

material changes to critical aspects of the construction of the
highway in violation of its [sic] own rules and regulations, in
violation of the public trust and for the private benefit of
Defendant Nicewonder." (Id. ¶ 21.) In Count III, plaintiff
alleges that the May 6, 2004, agreement does not comply with (1)
West Virginia and federal law regarding competitive bidding, (2)
West Virginia law regarding the payment of prevailing wages and
(3) federal law regarding the payment of prevailing/Davis-Bacon
wages. (Id. ¶ 25.) Lastly, in Count IV, plaintiff maintains
that the USDOT, in approving and making a determination that the
construction was in the public interest, unusual, cost effective,
rare and not likely to be repeated, undertook a final agency
action that is subject to judicial review insofar as it is an
action for which there is no other adequate remedy at law. (Id.
¶ 29.)

Plaintiff seeks a declaration that the agreement (1)
does not comply with West Virginia and federal law, (2) does not
comply with the West Virginia Constitution and there is no
rational basis for entering into the agreement, and (3) is void.
It further requests a declaration enjoining the defendants from
engaging in further action to implement the contract until and
unless the defendants comply with the law. With respect to

11

monetary relief, plaintiff seeks its attorney's fees and costs.

II.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not

12

lead a rational trier of fact to find in favor of the non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

III.

No party has identified any issue of fact and the court finds the matters presented to the court in the motions lend themselves to summary disposition.

A.  Standing

Nicewonder is the only defendant to raise the issue of plaintiff's standing to bring this action and it does so in terse fashion -- simply stating, without citation to any authority, that plaintiff has failed to demonstrate that it is an entity with standing.  Plaintiff responds that it has standing under West Virginia's Declaratory Judgment Act and cites only West Virginia law in support of its position.

When a declaratory judgment action filed in state court is removed to federal court, that action is converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  Golden Eagle Insurance Company v. Travelers Companies, 103 F.3d 750, 755 (9th Cir. 1996), overruled on other grounds, Government Employees Insurance Company v. Dizol, 133

13

F.3d 1220 (9th Cir. 1998).  The question of the existence of
standing to maintain an action in federal court is a question of
federal, not state law.  Phillips Petrol. Co. v. Shutts, 472 U.S.
797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("Standing to sue
in any Article III court is, of course, a federal question which
does not depend on the party's prior standing in state court.");
see also White v. National Union Fire Ins. Co., 913 F.2d 165, 167
(4th Cir.1990) ("Federal standards guide the inquiry as to the
propriety of declaratory relief in federal courts. . . ").

     To establish standing under the federal Declaratory
Judgment Act, a plaintiff must present the existence of a
substantial controversy between parties having adverse interests
of sufficient immediacy and reality to warrant issuance of a
declaratory judgment.  Scott v. Pasadena Unified School Dist.,
306 F.3d 646, 658 (9th Cir. 2002).  Whether the subject of a
declaratory judgment action is a sufficiently live controversy
rather than an abstract question "is necessarily one of degree,
and it would be difficult, if it would be possible, to fashion a
precise test for determining in every case whether there is such
a controversy."  Maryland Cas. Co. v. Pacific Coal & Oil Co., 312
U.S. 270, 273 (1941); see also White v. National Union Fire Ins.
Co., 913 F.2d 165, 167 (4th Cir. 1990) ("The test for a case or

14

controversy, the constitutional inquiry, is whether the dispute
is definite and concrete, touching the legal relations of parties
having adverse legal interests." (internal quotation marks
omitted)).   "Basically, the question in each case is whether the
facts alleged, under all the circumstances, show that there is a
substantial controversy, between parties having adverse legal
interests, of sufficient immediacy and reality to warrant the
issuance of a declaratory judgment."   Id.

          Plaintiff alleges, among other things, that it is a
labor organization that represents thousands of construction
workers throughout the state of West Virginia and that its
members include employees who are taxpayers of the state of West
Virginia and who work for companies that construct highways
similar to the highway at issue in this matter.

          Here, there is a controversy as to whether the contract
at issue violates state and federal law.  Plaintiff contends it
does, while defendants contend it does not; the parties clearly
have adverse interests; and a ruling on the issues present in the
motions would resolve a definite and concrete dispute between the
parties.  The court finds plaintiff has satisfied the standing

requirements.[2]

B.   <u>Alleged Violations of Federal Law</u>

    1.   <u>Authority to Enter into a Negotiated Contract</u>

       The court begins by setting forth the relevant statutes and regulations as identified by the parties.   Federal statutory law respecting federal aid for state highway construction projects prescribes that

> In all cases where the construction is to be performed by the State transportation department or under its supervision, a request for submission of bids shall be made by advertisement unless some other method is approved by the Secretary.

23 U.S.C. § 112(a).   Subsection (b)(1) of that same statute

---

    [2] It appears that were a West Virginia court to address the standing question under the West Virginia Declaratory Judgment Act, it would similarly conclude that plaintiff has standing inasmuch as the West Virginia supreme court has held, in the context of a standing analysis under the West Virginia Declaratory Judgment Act, that where a public contract is involved and where that contract has an impact on individuals, those individuals have standing to bring a declaratory judgment proceeding.   <u>West Virginia Utility Contractors Ass'n v. Laidley Field Athletic and Recreational Center Governing Bd.</u>, 260 S.E.2d 847, 849 (W. Va. 1979).   Furthermore, the same court has recognized that organizations have a right to sue on behalf of its members when "a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."   <u>Snyder v. Callaghan</u>, 284 S.E.2d 241, 251 (W.Va. 1981) (internal citations omitted).

further provides that

> [C]onstruction of each project, subject to the
> provisions of subsection (a) of this section, shall
> be performed by contract awarded by competitive
> bidding, unless the State transportation department
> demonstrates, to the satisfaction of the Secretary,
> that some other method is more cost effective or that
> an emergency exists.

A federal regulation further provides that

> (a) Actual construction work shall be performed by
> contract awarded by competitive bidding; unless, as
> provided in § 635.104(b), the STD [State
> Transportation Department] demonstrates to the
> satisfaction of the Division Administrator [of the
> FHWA] that some other method is more cost effective
> or that an emergency exists.[3]

23 C.F.R. § 635.104(a).  Another pertinent regulation states that

> (b) Except as provided for as emergency repair work
> in § 668.105(i) and in § 635.204(b), the term some
> other method of construction as used in 23 U.S.C.
> 112(b) shall mean the force account method of
> construction as defined herein.  In the unlikely
> event that circumstances are considered to justify a
> negotiated contract or another unusual method of
> construction, the policies and procedures prescribed
> herein for force account work will apply.

---

[3] Section 635.104(b) states that

(b) Approval by the Division Administrator [of the
FHWA] for construction by a method other than
competitive bidding shall be requested by the State in
accordance with subpart B of part 635 of this chapter.
Before such finding is made, the STD [State
Transportation Department] shall determine that the
organization to undertake the work is so staffed and
equipped as to perform such work satisfactorily and
cost effectively.

17

23 C.F.R. § 635.203(b).

From these statutes and regulations one can glean that competitive bidding is the norm for awarding highway construction contracts in which federal funds will be used.  It is, however, apparent that both Congress and the agency contemplated departures from the competitive bidding process under certain circumstances.

Plaintiff contends that the only type of "other method of construction" that may be undertaken without competitive bidding is that which is performed by a public entity, railroad or public utility.  Plaintiff's analysis begins with the phrase "some other method is more cost effective" as found in 23 U.S.C. 112(b) and 23 C.F.R. § 635.104(a).  Plaintiff then turns to the regulations, namely, 23 C.F.R. § 635.203(b) and (c) and quotes language in the former, which provides that "the term some other method of construction as used in 23 U.S.C. 112(b) shall mean the force account method of construction as defined herein."  Plaintiff nexts looks to the definition of the term "force account" found in subsection (c) of § 635.203 which states

> The term force account shall mean the direct performance of highway construction work by a State transportation department, a county, a railroad, or a public utility company by use of labor, equipment, materials, and supplies furnished by them and used

18

under their direct control.

Plaintiff reads the regulations to conclude that inasmuch as Nicewonder is not a State transportation department, public utility, public entity or railroad, federal law does not "contain any reference to the type of contract entered into in this matter."

Plaintiff's analysis, however, ignores the following sentence in 23 C.F.R. § 635.203(b), a subsection from which plaintiff quotes only in part,

> In the unlikely event that circumstances are considered to justify a negotiated contract or another unusual method of construction, the policies and procedures prescribed herein for force account work will apply.

Thus, 23 C.F.R. § § 635.203(b) expressly contemplates that a negotiated contract could be used as was done here.  The plain language of 23 C.F.R. § 635.203(b) simply indicates that when a State transportation department uses a negotiated contract, the force account policies and procedures set forth in 23 C.F.R. § 635.204 apply.  While the policy and procedures prescribed for force account work apply when the work is done pursuant to a negotiated contract, a force account was not used here, nor was it required to be used; rather, the "policies and procedures" set forth in § 635.204 apply when a negotiated contract is used.

19

Section 635.204 provides in its entirety,

> (a) Congress has expressly provided that the contract
> method based on competitive bidding shall be used by a
> State transportation department or county for
> performance of highway work financed with the aid of
> Federal funds unless the State transportation
> department demonstrates, to the satisfaction of the
> Secretary, that some other method is more cost
> effective or that an emergency exists.
>
> (b) When a State transportation department determines
> it necessary due to an emergency to undertake a
> federally financed highway construction project by
> force account or negotiated contract method, it shall
> submit a request to the Division Administrator
> identifying and describing the project, the kinds of
> work to be performed, the method to be used, the
> estimated costs, the estimated Federal Funds to be
> provided, and the reason or reasons that an emergency
> exists.
>
> (c) Except as provided in paragraph (b) of this
> section, when a State transportation department
> desires that highway construction work financed with
> the aid of Federal funds, other than the kinds of work
> designated under § 635.205(b), be undertaken by force
> account, it shall submit a request to the Division
> Administrator identifying and describing the project
> and the kind of work to be performed, the estimated
> costs, the estimated Federal funds to be provided, and
> the reason or reasons that force account for such
> project is considered cost effective.
>
> (d) The Division Administrator shall notify the State
> transportation department in writing of his/her
> determination.

The policies and procedures found in this section primarily serve

to set forth the manner in which a state shall go about securing

federal funds absent competitive bidding.  A negotiated contract,

as was used here, is contemplated by this regulation and the policies and procedures apply when a State transportation department enters into a negotiated contract with a private entity, such as Nicewonder.  Moreover, the procedures set forth in the regulation appear to have been followed in this case as more fully discussed below.  The court accordingly finds unpersuasive plaintiff's suggestions that a negotiated contract entered into without competitive bidding was not permitted.

2.    <u>Alleged Deficiency of the WVDOH Public Interest Finding</u>

Plaintiff next asserts that the public interest finding was deficient.  In support, it relies on 23 C.F.R. § 635.205(a) which states that

> It may be found cost effective for a State transportation department or county to undertake a federally financed highway construction project by force account when a situation exists in which the rights or responsibilities of the community at large are so affected as to require some special course of action, including situations where there is a lack of bids or the bids received are unreasonable.

Plaintiff insists that insofar as there was no finding that (1) "the rights and responsibilities of the community at large are so affected as to require a special course of action" or (2) that there were a lack of bids or the bids received were unreasonable, the finding was deficient.

21

The Contract Administration Core Curriculum Participant's Manual and Reference Guide ("Manual") which appears in the administrative record as a document printed from the FHWA's website offers guidance on the interpretation of 23 C.F.R. § 635.205(a).  The manual's relevancy is acknowledged by both plaintiff and USDOT and it provides in pertinent part

> A cost effectiveness finding is required for the FHWA/STA approval of any proposal to use a noncompetitive method of contracting.  Title 23 C.F.R. 635 cites the following situations as <u>possible reasons</u> for the use of noncompetitive construction contracting:
>
> •   when the rights or responsibilities of the community are so affected as to require a special course of action, including situations where there is lack of competition or unreasonable bids, it may be determined to be cost effective to use a force account . . .

(AR. 20 at 245.) (emphasis supplied.)  The agency has thus interpreted the instances described in 23 C.F.R. § 635.205(a) as possible reasons, but not the only reasons, for the use of noncompetitive construction contracting.  Under the APA, substantial deference is afforded to an agency's interpretation of its own regulations unless it is plainly erroneous or inconsistent with the regulation.  <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994).  Plaintiff simply cannot demonstrate that the agency's interpretation of its regulation

22

was erroneous or inconsistent with the regulation.[4]


3.   Alleged Failure to Demonstrate the Project was "Cost Effective" or "Unusual and Unlikely to Recur"

Plaintiff asserts that even if the court recognizes a cost effective exemption to the competitive bidding requirement, there has been no demonstration that the project was in fact cost effective or unusual and unlikely to recur.

a.   Cost Effectiveness

With respect to cost effectiveness, plaintiff posits that competitive bidding would have been more cost effective than the negotiated contract.  Plaintiff further asserts that (1) the traditional construction method figures used in the cost comparison were not based on actual bids and were therefore speculative, (2) the cost comparison does not consider cost differentials based on relaxed road building requirements, (3) the cost comparison is flawed because it is in part based upon costs for different alignments of the highway, (4) the cost comparison fails to consider the changes in the market price of

---

[4] It is also worthy to note that the manual contemplates "force account contracts with a private contractor."  (AR at 245.)

coal and fails to acknowledge that the contract in this matter permits all of the benefits for increases in the sale price of coal to accrue to Nicewonder with decreasing prices being borne by the WVDOH; and (5) expert testimony establishes that West Virginia taxpayers would have received a greater economic benefit if the project had been competitively bid.  In essence plaintiff is contending that the cost effectiveness finding runs counter to the evidence before the agency.

Cost effectiveness is defined to mean "the efficient use of labor, equipment, materials and supplies to assure the lowest overall cost."  23 C.F.R. § 635.203(e).  Here, the cost effectiveness finding was based on a comparison between the traditional cost of construction and the cost of a negotiated contract.  (AR 56 at 780.)  A detailed cost comparison is provided in the administrative record. (AR 56 at 769-780.)  The calculation of the traditional cost of construction, estimated to be $339.1 million, was derived from extrapolating costs incurred in other recently completed highway construction projects.  The lower cost estimate under the negotiated contract with Nicewonder was 146.1 million, while the higher cost estimate was 169.1

24

million.[5]  Thus, even using the higher cost estimate, the

estimated cost of construction under the negotiated contract was

less than half of that which it would have been under the

traditional method.  While plaintiff objects to the methodology

used in the cost comparison, the court finds that the methodology

employed is nevertheless reasonable and the finding that the

negotiated contract method was cost effective is adequately

supported.

b.  <u>Unusual and Unlikely to Recur</u>

          As the court has previously observed, the regulations

provide that "[i]n the unlikely event that circumstances are

considered to justify a negotiated contract or unusual method of

construction, the policies and procedures prescribed herein for

---

          [5] The agreement between WVDOH and Nicewonder calls for an
excavation cost reduction to be given to the WVDOH with the
amount of the reduction dependent upon the amount of coal
Nicewonder recovers.  (Agreement ¶¶ 10.3, 10.4, AR 56 at 858.)
There is no reduction if Nicewonder recovers less than 1.5
million tons of coal, while there is a reduction if the coal
recovered ranges from 1.5 million to 2.5 million tons.  (<u>Id.</u>)
The reduction increases depending on the amount of coal recovered
within this range; however, there is no further reduction if the
coal recovered exceeds 2.5 million tons. (<u>Id.</u>)  The lower cost
estimate reflects the recovery of 2.5 million, or more, tons of
coal, while the higher cost estimate reflects the recovery of
less than 1.5 million tons of coal. (AR 56 at 770.)  Nicewonder
estimated that there was approximately 2.5 million tons of
recoverable coal.  (<u>Id.</u>)  An independent engineer hired by the
WVDOH verified this estimate.  (<u>Id.</u>)

force account work will apply."  FHWA has interpreted these
regulations in its manual to mean that "the consideration of any
noncompetitive construction contract method requires a cost
effectiveness determination as well as an evaluation which
demonstrates that the circumstances are unusual and unlikely to
recur."  (AR 20 at 244.)  The manual further states that
"[c]ircumstances that justify a negotiated contract should be
even more of an exception [to competitive bidding] making
approvals of such contract methods extremely rare."  (Id. at
245.)

       The Public Interest Finding by the WVDOH provides that

> This project is the only example where the WVDOH has
> requested Federal-aid reimbursement for a negotiated
> construction project.  Therefore it is rare.  This
> project is also very unusual and unique.  Many
> factors merged (coal mine operation, acceptable fill
> construction techniques, marketable coal reserves)
> which allow for the construction of this much needed
> and supported project while minimizing the cost to
> taxpayers.  Given the convergence of these factors,
> it is unlikely to recur with any regularity in West
> Virginia (although there may be additional
> opportunities for significant cost savings at other
> locations which would warrant further investigation
> and discussion).

(AR 56 at 716.)  Plaintiff objects to the findings that the
contract is rare and that the circumstances justifying a
negotiated contract are unusual and unlikely to recur.  Plaintiff
observes, among other things, that there is evidence of record

26

that this project was considered a "model" by the FHWA and the language in the public interest finding contemplates that a similar project could recur.

As stated in the finding, however, this project is the only example where the WVDOH has requested Federal-aid reimbursement for a negotiated construction contract and it "represents a modest percentage of the State's annual federal-aid highway program." (AR 55 at 700.)  The government observes, and the court agrees, that in light of the large number of projects that are processed through the Federal-aid program, one negotiated contract may be rare and unusual.  Additionally, the conclusion that the project was unlikely to recur was supported as explained in the public interest finding and, contrary to plaintiff's suggestion, the fact that the FHWA hoped that a similar opportunity would occur does not alter this conclusion.

Thus, the court concludes that the finding that the project was unusual and unlikely to recur is also adequately supported by the record.

C.  <u>Davis-Bacon Act Exemption</u>

Plaintiff contends that it was impermissible under federal law for the agreement to exempt Nicewonder from the

27

payment of Davis-Bacon wages.  USDOT responds asserting that plaintiff has failed to exhaust administrative remedies and further contends that Nicewonder's exemption from Davis-Bacon was not arbitrary and capricious.

1.  Background

        The Davis-Bacon Act, 40 U.S.C § 3141-3148, prescribes that contractors and subcontractors receiving federal funds for projects pay certain employees the prevailing wage rate for their job classification as determined by the Secretary of Labor. Frank Bros., Inc. v. Wisconsin Dept. of Transp., 409 F.3d 880, 882 (7th Cir. 2005) (citation omitted).  More specifically, the Davis-Bacon Act states

        (a) Application. -- The advertised specifications
        for every contract in excess of $2,000, to which the
        Federal Government or the District of Columbia is a
        party, for construction, alteration, or repair,
        including painting and decorating, of public
        buildings and public works of the Government or the
        District of Columbia that are located in a State or
        the District of Columbia and which requires or
        involves the employment of mechanics or laborers
        shall contain a provision stating the minimum wages
        to be paid various classes of laborers and
        mechanics.

        (b) Based on prevailing wage. -- The minimum wages
        shall be based on the wages the Secretary of Labor
        determines to be prevailing for the corresponding
        classes of laborers and mechanics employed on
        projects of a character similar to the contract work
        in the civil subdivision of the State in which the

> work is to be performed, or in the District of
> Columbia if the work is to be performed there.

40 U.S.C. § 3142(a)-(b).  While the Davis-Bacon Act, by its own

terms, applies only to contracts to which the United States is a

party, the Federal-Aid Highway Act provides that

> The Secretary [of Transportation] shall take such
> action as may be necessary to insure that all
> laborers and mechanics employed by contractors or
> subcontractors on the construction work performed on
> highway projects on the Federal-aid highways
> authorized under the highway laws providing for the
> expenditure of Federal funds upon the Federal-aid
> systems, shall be paid wages at rates not less than
> those prevailing on the same type of work on similar
> construction in the immediate locality as determined
> by the Secretary of Labor in accordance with sections
> 3141-3144, 3146, and 3147 of title 40 [the Davis-
> Bacon Act].

23 U.S.C. § 113(a).  Thus, highway contractors are required to pay

Davis-Bacon wages under federal-aid highway contracts to which the

United States is not a party, but which are financed in whole or

in part with federal funds.  Vulcan Arbor Hill Corp. v. Reich, 81

F.3d 1110, 1111 (D.C. Cir. 1996).

The United States Supreme Court has recognized that a

contracting agency has the "initial responsibility for determining

whether a particular contract is subject to the Davis-Bacon Act."

Universities Research Ass'n v. Coutu, 450 U.S. 754, 760 (1981).

Here, the FHWA determined that the contract at issue was not

subject to the Davis-Bacon Act and Nicewonder was not required to pay Davis-Bacon wages.  The rationale for this decision can be found in the administrative record.

On June 23, 2004, Tom Smith, FHWA Division Administrator for West Virginia, received a phone call from Jim Zoia of the office of Congressman Rahall (M.C. - W.Va).  (AR 50 at 270.) According to Mr. Smith, Mr. Zoia indicated that the AFL-CIO had expressed concerns regarding Nicewonder's exemption from the payment of Davis-Bacon wages and wanted information pertaining to the regulations upon which the FHWA relied for the exemption. (Id.)  In an email to, among others, counsel for FHWA, Mr. Smith stated that

> The justification [for the exemption from Davis-Bacon wages] has consistently been that 23 CFR 635 Subpart B allows FHWA to agree to projects which are not competitively bid, if determined to be in the public interest.  If such a project is approved by FHWA, then the usual contract provisions that follow with a competitively let contract also do not apply.  Given the unique circumstances and position of the coal mining company's operation, the arrangement allowed Premium Energy [Nicewonder] to utilize their existing labor force without modification (similar to the position that FHWA has have [sic] taken for agreements with utilities and railroads).

(AR 50 at 271.)  In an email also sent on June 23, 2004, James Scouten, counsel for the FHWA, indicated that the issue regarding Nicewonder's exemption from the payment of Davis-Bacon wages had

30

been previously discussed with Mr. Smith, and Mr. Scouten stated
that "we [Mssrs. Smith and Scouten] concurred that applying the
force account/railroad rationale that Davis Bacon need not apply,
if the public interest finding supported using some other method
than competitive bidding."  (Id. at 270.)

2.  Exhaustion of Administrative Remedies

        The parties are in agreement that plaintiff's claim
against USDOT may only be pursued under the APA.  USDOT contends,
in a one-paragraph discussion, that plaintiff failed to seek
recourse with review by the Department of Labor which USDOT
asserts was required because, it says, the FHWA's coverage and
classification determinations under the Davis-Bacon Act are
subject to administrative review.  USDOT merely cites to
regulations and a statute which do not appear to be applicable
and then adds a cite to Universities Research Ass'n v. Coutu, 450
U.S. 754 (1981) in support of its position.

        In Coutu, the Court stated that

    The contracting agency's coverage and classification
    determinations [under the Davis-Bacon Act] are subject
    to administrative review.  Prior to the award of a
    contract, a contractor, labor organization or employee
    may appeal a final agency determination that a project
    is not covered by the Act to the Department of Labor.

 Id. at 760 (internal citations omitted).  In a footnote at the

31

end of the preceding sentence, the Court recognized that the
parties disputed whether the Department of Labor's coverage
determination was binding on the contracting agency.  The Court
then observed that, "[t]here is currently no administrative
procedure that expressly provides review of a coverage
determination after the contract has been let."  Id. at 761, n.
9.

        It appears that the regulations have not changed with
respect to coverage determinations since the decision in Coutu.
USDOT has not identified any administrative procedure that
expressly provides for review of a coverage determination after
the contract has been let, as it was here.  Additionally, the
United States Supreme Court has observed that

>       [W]here the APA applies, an appeal to 'superior
>       agency authority' is a prerequisite to judicial
>       review only when expressly required by statute or
>       when an agency rule requires an appeal before review
>       and the administrative action is made inoperative
>       pending that review.  Courts are not free to impose
>       an exhaustion requirement as a rule of judicial
>       administration where the agency action has already
>       become final under 10(c).

Darby v. Cisneros, 509 U.S. 37, 153 (1993).  USDOT has not
identified any regulations which provide for the final agency
action at issue to be inoperative during review, and, under Darby,
the court may not impose an exhaustion requirement.  USDOT's

32

argument that plaintiff was required to seek administrative review accordingly fails.


3.  Permissibility of Exemption from Davis-Bacon

        In its briefing, USDOT provides no explanation for Nicewonder's exemption beyond what appears in the administrative record.  Instead, it asserts that there was (1) a rational connection between the facts and decision to permit the exemption of Nicewonder; (2) its decision was within the bounds of reasoned decision making and (3) it is entitled to select its own "methodology" insofar as the selected methodology is reasonable. USDOT concludes that Nicewonder's exemption from Davis-Bacon was not arbitrary and capricious.

        Plaintiff cites to and discusses 23 U.S.C. § 113(a) in support of its position which, as earlier observed, provides that

> The Secretary [of Transportation] shall take such
> action as may be necessary to insure that all laborers
> and mechanics employed by contractors or subcontractors
> on the construction work performed on highway projects
> on the Federal-aid highways authorized under the
> highway laws providing for the expenditure of Federal
> funds upon the Federal-aid systems, shall be paid wages
> at rates not less than those prevailing on the same
> type of work on similar construction in the immediate
> locality as determined by the Secretary of Labor in
> accordance with sections 3141-3144, 3146, and 3147 of
> title 40 [the Davis-Bacon Act].

33

Oddly, USDOT makes no mention of this statute in its briefing. USDOT simply appears to posit that its decision that Nicewonder was exempt from the payment of Davis-Bacon wages is entitled to deference.

Here, the interpretation of a statute, namely, 23 U.S.C. § 113(a), is at issue. USDOT fails to appreciate the deference that is given to its application of a statute or regulation versus the deference that is given to its interpretation of a statute or regulation. As to the former, as the Court has observed, the standard of review under the APA is highly deferential to the agency. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416. With respect to the latter, deference is given to an agency's interpretation "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226-27 (2001). The court conducts review of an agency's interpretation of a statute under the framework set forth in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43.

First, "if the statute speaks clearly 'to the precise

34

question at issue,'[the court] 'must give effect to the
unambiguously expressed intent of Congress." Barnhart v. Walton,
535 U.S. 212, 217-18 (2002) (quoting Chevron, 467 U.S. at 842-43,
104 S.Ct. 2778).  A court does not need to inquire further if
"employing traditional tools of statutory construction, [it]
ascertains that Congress had an intention on the precise question
at issue . . ." Chevron, 467 U.S. at 843 n. 9.  However, if the
statute is silent or ambiguous, the court is required to defer to
an agency's interpretation if it is "based on a permissible
construction of the statute." Id. at 843.

     It has been recognized that 23 U.S.C. § 113 "assures
that the mandatory provisions of the Davis-Bacon Act, such as the
payment by contractors of a prevailing minimum wage to certain
covered employees, will be adhered to on federally funded highway
contracts." Frank Bros., 409 F.3d 880, 888 (7th Cir. 2005).
Another court of appeals has similarly stated that "23 U.S.C. §
113(a) requires that all laborers and mechanics employed on
federally-funded projects be paid the prevailing wage rate as
determined by the Secretary of Labor under the Davis-Bacon Act."
Siuslaw Concrete Const. Co. v. State of Wash., Dept. of Transp.,
784 F.2d 952, 953 (9th Cir. 1986).  Here, there was a federally
funded highway project and the workers being employed by

35

Nicewonder, the contractor, are not being paid the prevailing wage rate under the Davis-Bacon Act as mandated by 23 U.S.C. § 113(a).  Accordingly, Nicewonder's exemption from the payment of Davis-Bacon wages violates the unambiguous terms of 23 U.S.C. § 113(a).

USDOT fails to discuss 23 U.S.C. § 113(a) in its briefing nor has it offered an interpretation of this statute or any other statute which would exempt Nicewonder from the payment of Davis-Bacon wages.  USDOT asserts that so long as the Public Interest Finding supports a contract method other than competitive bidding, Davis-Bacon need not apply and it is acceptable to use the "force account/railroad rationale.

As the court has observed, and USDOT emphasizes, the project at issue is not a force account project; rather, it is a negotiated contract.  The U.S. Department of Labor Field Operations Handbook provides that "[i]n essence, [force account] is a 'do-it-yourself' type of construction - the governmental agency receiving the grant decides not to contract out the work but actually performs it 'in-house.'"  Although not discussed by the parties nor explained in the administrative record, it seems to the court that the rationale for exempting an entity

performing force account work from the payment of Davis-Bacon
wages is that the entity is not a "contractor" or "subcontractor"
as those terms are used in 23 U.S.C. § 113(a).  Here, there is
nothing before the court which would suggest that Nicewonder is
not a "contractor" under that statute.

        Moreover, the agency's position that so long as
competitive bidding is not used Davis-Bacon wages need not apply
is undercut by the FHWA's Emergency Relief Manual.[6]  Just as
Congress contemplated departure from competitive bidding when
there is a demonstration of cost effectiveness, Congress
similarly contemplated a departure from competitive bidding when
an emergency exists.  23 U.S.C. § 112(b)(1).  The FHWA's
Emergency Relief Manual, however, does not permit an exemption
from the payment of Davis-Bacon wages when an emergency exists.
Instead, it provides that

    Davis-Bacon wage rates on Federal-aid construction
    contracts apply for all ER [presumably emergency
    relief] contracts.  This provision cannot be waived by
    the FHWA.  Davis-Bacon Act requirements may be waived
    only by executive order of the President.

(Referencing 40 U.S.C. § 276(a), now codified at 40 U.S.C. §
3142(a)).  Thus, the fact that the FHWA's manual mandates the

_____

        [6] The manual is not before the court, but was cited verbatim
by plaintiff.

payment of Davis-Bacon wages even outside the competitive bidding scheme undermines the USDOT's rationale that exemption from the payment of Davis-Bacon wages is proper absent competitive bidding.

In view of the foregoing, the court concludes that the agreement's exemption of Nicewonder from the payment of Davis-Bacon wages, which was endorsed by the FHWA, was in violation of an unambiguous federal statute.

4.   <u>Remedy</u>

In plaintiff's motion for summary judgment as to defendant USDOT it states

> Plaintiff . . . [m]oves this Court for a Declaration that the actions of the USDOT are in violation of the laws and regulations of the United States of America and the duties and responsibilities of Defendant USDOT as detailed in the accompanying Memorandum of Law, are in excess of statutory authority, supported by substantial evidence, and are therefore void and that all activity by Defendant or others undertaken as a result of or pursuant to said actions or agreement or agreements shall be enjoined.  The Plaintiff further move [sic] this Court that it award Plaintiff attorney's fees and costs incurred by them in the prosecution of this action; and that the Court grant other relief as it deems appropriate.

(Pl.'s Mot. for S.J. as to USDOT at 3.)

The parties are directed to brief the appropriate declaratory relief for the failure to comport with the Davis-

Bacon Act and include a proposed Judgment Order.

D.   Alleged Violations of State Law

          In the notice of removal, Nicewonder and the WVDOH
represent that federal jurisdiction is proper under 28 U.S.C. §
1441 inasmuch as this is a civil action arising out of the
alleged violations of federal law.  No other basis for
jurisdiction is stated in the notice of removal.  The court has
resolved the purported violations of federal law and the
remaining allegations pertain only to alleged violations of
state law as set forth in Counts I through III, namely, the
agreement violates West Virginia law generally and West
Virginia's prevailing wage and competitive bidding requirements.

          Under 28 U.S.C. § 1367(c)(3), a court has discretion
to decline the exercise of supplemental jurisdiction over state
law claims if the court "has dismissed all claims over which it
has original jurisdiction."  Among the factors that inform this
discretionary determination are convenience and fairness to the
parties, the existence of any underlying issues of federal
policy and comity, and considerations of judicial economy.
Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7
(1988).  In United Mine Workers of America v. Gibbs, 383 U.S.

39

715, 726 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  The Supreme Court further noted that "[c]ertainly if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."  Id.   The Fourth Circuit has read Gibbs as recognizing "the desirability of having state courts interpret questions of state law" and also noted that "the federal interests supporting federal resolution of pendent state claims recede when the federal questions are dismissed." Mitcheson v. Harris, 955 F.2d 235, 238 (4ᵗʰ Cir. 1992).  Furthermore, if the case has been removed from state court to federal court, after dismissing the federal claims, the federal court may remand the case to state court pursuant to 1367(c).  See Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir.2001) ("under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from state court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met.").

Inasmuch as all the federal issues will have been resolved short of trial and inasmuch further as the remaining state law claims involve novel or complex issues not related to federal policy, the court will decline to exercise jurisdiction over the remaining state law claims.

IV.

It is accordingly ORDERED as follows:

1.  Plaintiff's motions for summary judgment, filed May 1, 2006, and June 8, 2006, are granted as to the federal Davis-Bacon claim.

2.  Defendant United States Department of Transportation's motion for summary judgment, filed July 10, 2006, is denied.

It is further ORDERED that the court shall retain jurisdiction of the federal Davis-Bacon claim for the purpose of determining appropriate declaratory relief.  Plaintiff shall submit a memorandum with respect to the appropriate declaratory relief for the failure to comply with the Davis-Bacon Act on or before September 25, 2007.  The affected defendants shall respond to this memorandum on or before October 12, 2007, and

41

plaintiff shall file any reply thereto on or before October 22, 2007.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

DATED:  September 5, 2007

John T. Copenhaver, Jr.
United States District Judge