IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

THE AFFILIATED CONSTRUCTION
TRADES FOUNDATION, a division of
the West Virginia State Building and
Construction Trades Council, AFL-CIO;

    Plaintiff,

v.                                          Civil Action No. 2:04-1344
                                            Judge John T. Copenhaver, Jr.

THE WEST VIRGINIA DEPARTMENT
OF TRANSPORTATION, Division of
Highways, THE UNITED STATES DEPARTMENT
OF TRANSPORTATION; THE WEST
VIRGINIA BOARD OF EDUCATION; THE
MINGO COUNTY REDEVELOPMENT AUTHORITY;
and NICEWONDER CONTRACTING, INC.,

    Defendants.

**DEFENDANT NICEWONDER CONTRACTING INC.'S
MEMORANDUM REGARDING THE APPROPRIATE
DECLARATORY RELIEF FOR THE DAVIS-BACON ACT CLAIM**

**I.
INTRODUCTION**

By Order dated September 5, 2007, this Court concluded that the provision of the road construction agreement at issue between defendants Nicewonder Contracting, Inc. ("NCI") and the West Virginia Department of Transportation, Division of Highways ("WVDOH") exempting NCI from payment of "prevailing wages" established pursuant to the federal Davis-Bacon Act, 40 U.S.C. § 3141 *et seq.*, violates the Federal-Aid Highway Act, 23 U.S.C. § 113(a).  The Order further directed the parties "to brief the appropriate declaratory relief for the failure to comport with the Davis-Bacon Act and include a proposed Judgment Order."  [Docket No. 134 at 38-39].  Plaintiff

Affiliated Construction Trades Foundation ("ACT") filed its memorandum on October 9, 2007. By Order dated October 22, 2007, the Court established December 3, 2007 as the deadline for the affected defendants to file their memoranda on the appropriate remedy for the Davis-Bacon Claim. [Docket No. 141].

NCI hereby submits the following memorandum on the appropriate declaratory relief for the absence of the Davis-Bacon Act "prevailing wages" provisions in the construction contract at issue.

## II.
## FACTUAL BACKGROUND

As more fully described in the Court's September 5, 2007 Order [Docket No. 134], NCI and WVDOH are parties to an agreement under which NCI would partially construct, to rough-grade, approximately eleven-miles of a section of the King Coal Highway known as the Red Jacket Section ("Agreement"). The Agreement calls for NCI to construct the road base (*i.e.,* flat land) for the 11-mile section of highway and certain connector roads. The Agreement does not call for NCI to perform any type of "finishing work" such as paving, sub-grade development, guardrail installation, median construction, etc. This work will presumably be performed by WVDOH through the traditional project bidding process.

Although co-defendant United States Department of Transportation ("USDOT") provided part of the funding for the project, it is not a party to the Agreement. No other party to this case is a party to that Agreement besides WVDOH and NCI. One provision of the Agreement notes that the parties believe NCI is exempt from the requirements of the federal Davis-Bacon Act, which in conjunction with other statutes generally requires federal agencies to ensure certain terms are included in construction contracts funded, at least in part, by federal money. While Davis-Bacon and its implementing regulations mandate a whole host of specific terms that must appear in covered contracts, this case involves the provision calling for payment of "prevailing wages"

established by the United States Department of Labor. The Agreement did not contain any terms that required NCI to pay "prevailing wages" to employees working on the project because NCI, WVDOH, and USDOT believed in good faith that Davis-Bacon was not applicable. In fact, the Agreement expressly stated that NCI was not required to pay "prevailing wages."

The Court has determined that this provision of the Agreement violates the Federal-Aid Highways Act, 23 U.S.C. § 113(a). That Act requires the Secretary of Transportation to "take such action as may be necessary" to ensure employees working on federally funded highway projects receive "prevailing wages" as called for by the Davis-Bacon Act. The Court must now determine the appropriate remedy, if any, for the failure of the contract to require payment of "prevailing wages" according to Davis-Bacon.

As explained more fully below, the only appropriate remedy is for this Court to require USDOT to comply with 23 U.S.C. § 113(a) by "tak[ing] such action as may be necessary" to ensure the Agreement is amended to include the terms required by Davis-Bacon and the implementing regulations for prospective work covered by the Agreement.

## III.
## APPLICABLE LAW

**A.    Declaratory Judgments Act**

As this Court previously noted, this action was originally filed in West Virginia state court under the West Virginia Declaratory Judgment Act, but once properly removed it was converted into an action under the federal Declaratory Judgments Act ("DJA"), 28 U.S.C. §§ 2201, 2202. [Docket 134 at 13]. Under the DJA, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In other words, a federal court may declare the rights of interested parties regardless of whether the parties are entitled to any further relief based on those rights.

B.  **Davis-Bacon Act and Federal-Aid Highways Act**

These statutes impose affirmative obligations <u>only</u> on the federal government, here USDOT, to ensure covered construction contracts include certain terms, such as payment of "prevailing wages" to "laborers and mechanics" who perform work under the contract. By its terms, the Davis-Bacon Act only applies to contracts "in excess of $2,000, to which the Federal Government or the District of Columbia is a party." 40 U.S.C. § 3142(a). The Federal-Aid Highways Act extends the "prevailing wages" requirement to highway construction projects that receive federal funds. 23 U.S.C. § 113(a). In addition to the statutory requirements, the United States Department of Labor has promulgated regulations that set forth in detail the contractual provisions required by the Davis-Bacon Act, Federal-Aid Highways Act, and numerous other federal statutes. *See* 29 C.F.R. § 5.1 *et seq*. Among those provisions is the requirement that the contractor ensure all "mechanics and laborers employed directly on the site of work" are paid the "prevailing wages" established by the United States Department of Labor. 40 U.S.C. § 3142(c); 29 C.F.R. § 5.5(a).

Neither the Davis-Bacon Act nor the Federal-Aid Highways Act create any affirmative obligations on contractors outside of those that may be set forth in a contract. A contractor such as NCI has no independent, non-contractual duty to pay "prevailing wages" to employees working on federally funded construction contracts. The federal agencies have the "responsibility for determining whether a particular contract is subject to the Davis-Bacon Act." *Universities Research Assoc. v. Coutu*, 450 U.S. 754, 760 (1981). The obligation to pay "prevailing wages" arises solely from the terms of the contract. If the applicable agency determines a contract is not subject to Davis-Bacon and does not require payment of "prevailing wages" as a term of the contract, a contractor has no obligation to do so.

If an agency determines a contract is not subject to Davis-Bacon, individuals who perform work covered by the contract may not bring a civil action claiming that decision was erroneous and seek back wages based on the higher "prevailing wages" that would have been paid had the Davis-Bacon terms been included in the contract. *Coutu*, 450 U.S. at 770. In *Coutu*, the federal Atomic Energy Commission authorized a contract with Universities Research Association ("URA") to provide scientific and management services in connection with construction of a nuclear research laboratory. *Id.* at 762. The contract expressly stated that URA employees would not perform any work subject to the Davis-Bacon Act and did not contain terms requiring payment of "prevailing wages" to URA employees. The contract stated that any work subject to Davis-Bacon would be performed through sub-contracts approved by the Commission. *Id.* The contract further provided that it would be modified if circumstances arose making it necessary that Davis-Bacon work would need to be performed by URA. *Id.* at 763. Eight years after the contract was executed, Stanley Coutu, a former employee of URA who performed work under the contract, filed a class action suit against URA "seeking more $5 million in damages based on the theory that [URA] had violated the Davis-Bacon Act by failing to pay prevailing wages for construction work performed by its employees under the contract with the [Commission]." *Id.* at 764. Mr. Coutu claimed that the work he performed under the contract as a URA employee was subject to Davis-Bacon and therefore he was entitled to "prevailing wages" for the type of work he performed.

After carefully parsing the language of the Davis-Bacon Act and reviewing its legislative history, a unanimous Court concluded that "Congress did not intend to create a private right of action in favor of an employee under a contract that does not contain prevailing wage stipulations." *Id.* at 770. In essence, *Coutu* stands for the proposition that once a federal agency determines a contract is not subject to the Davis-Bacon Act, and no requirement to pay "prevailing wages"

included, no claims for damages may be brought on the theory that the agency wrongly omitted the contractual provisions required by the Davis-Bacon Act. *See also Weber v. Heat Control Co.*, 728 F.2d 599 (3d Cir. 1984) (same).

## IV.
## DISCUSSION OF APPROPRIATE REMEDY

In its previously submitted memorandum, ACT recites essentially four requests for relief: (1) amendment of the contract to provide for payment of the applicable "prevailing wages" on a prospective basis to "laborers and mechanics" that perform future work covered by the Agreement; (2) an award of back wages to "laborers and mechanics" that worked on the project based on the difference between actual wages paid and the "prevailing wages" for the type of work performed; (3) an injunction against further work on the project or termination of the Agreement; and (4) payment of ACT's attorney fees by USDOT.

As explained more fully below, the only appropriate remedy for the failure of the contract to include Davis-Bacon stipulations is to order USDOT to "take such action as may be necessary" to amend the Agreement to call for payment of "prevailing wages" under the Davis-Bacon Act on a prospective basis. An award of back wages and benefits for individuals that performed past work under the Agreement is simply not an available remedy per *Coutu*. Furthermore, these individuals are not before the Court and ACT does not have standing to seek damages on their behalf even if such damages were available. No grounds for termination of the contract exist and no evidence of irreparable harm has been adduced to support issuance of an injunction. ACT has not requested an award of attorney fees from NCI, and NCI takes no position on the propriety of the request from USDOT.

A.  **Back Wages Are Not Available Under the Davis-Bacon Act for Contracts Without Terms Requiring Payment of Prevailing Wages**

As discussed above, the United States Supreme Court unanimously declared in *Coutu* that once a federal agency determines a contract is not subject to the Davis-Bacon Act, and therefore does not insist upon inclusion of the "prevailing wages" terms in the contract, an employee who worked on the project may not bring a claim against contractor for back wages on the basis that "prevailing wages" should have been paid. This Court clearly recognized in its September 5, 2007 Order that USDOT made an affirmative determination that the Agreement was not subject to Davis-Bacon and therefore the "prevailing wages" terms were not included. [Docket No. 134 at 30-31]. Under *Coutu*, those individuals who performed work covered by the Agreement could not bring any type of action against NCI for failure to pay "prevailing wages." This makes sense since NCI had no obligation to pay "prevailing wages" under the Agreement and neither Davis-Bacon nor the Federal-Aid Highways Act impose any duty on NCI to pay such wages. Whatever duties exist under these statutory provisions were borne solely by USDOT.

If the individuals who would be the recipients of any back wages award cannot bring such a claim themselves, then no other party can do so. Whatever interests ACT seeks to advance are derivative of those individuals' rights. If they cannot bring a claim for damages, neither can ACT even if it had standing to do so. Therefore, an award of back wages is wholly inappropriate.

B.  **ACT Has No Standing To Seek Further Relief Beyond What Has Already Been Declared in the September 5, 2007 Order**

Even if back wages were an available remedy, ACT has no standing to seek them. As noted in the September 5, 2007 Order, ACT describes itself as a labor organization that represents thousands of construction workers in West Virginia. [Docket No. 134 at 15]. What is notably absent from the entire record of this matter is any allegation or evidence that ACT represents any of the individuals who performed work covered by the Agreement. There is no allegation or evidence

that any of these individuals are members of ACT or any labor organization that ACT claims to represent. Nevertheless, without citation to any legal authority, ACT requests this Court declare that all these individuals, who ACT does not even purport to represent, should be paid back wages for the difference, if any, between the actual wages paid and the established "prevailing wages" for the type of work at issue. Pl. Memo. at 8-12 [Docket No. 138]. In essence, ACT is seeking and award of damages for parties it does not represent and are not before this Court. Furthermore, ACT believes it should be integrally involved in the process of calculating and allocating such an award. "Plaintiff should have access to all the information, documents and all aspects of this effort to correct the violations of the Defendants." *Id.* at 12.

Whatever standing ACT may have to seek a declaration of rights under the DJA vis-à-vis the Agreement, it does not have standing to seek damages for individuals that it does not even purport to represent and are not before this Court. It is black letter law that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The United States Supreme Court has identified only three exceptions to the prohibition on so-called third-party standing: (1) where a third party is unlikely to assert its rights, *Powers v. Ohio*, 499 U.S. 400 (1991) (criminal defendant can raise rights of prospective jurors not to be excluded on basis of race); (2) where a close relationship exists between the plaintiff and third party, *Singleton v. Wulff*, 428 U.S. 106 (1976) (physicians may assert rights of patients); and (3) in First Amendment cases where the challenged law may cause others not before the court to refrain from constitutionally protected speech - known as the "overbreadth doctrine." *Secretary of State v. J.H. Munson Co.*, 467 U.S. 947, 956 (1984). None of these exceptions are applicable here.

First, there is no evidence that the individuals who have performed work under the Agreement are unlikely to assert what rights they may have. Moreover, as discussed above, they do not have a claim for back wages so there are no rights for ACT to assert on their behalf. Second, there is no evidence that ACT has any kind of relationship, much less a "close" one, with these individuals. Third, the claims in this case do not involve First Amendment issues and therefore the overbreadth doctrine is inapposite. There is simply no basis to conclude that ACT may assert the rights of the individuals who performed work covered by the Agreement.

Had ACT prevailed on its claims that the Agreement violated federal laws governing competitive bidding, it may have had standing to assert the legal interests of its members to submit bids on the project. But it did not. ACT only prevailed on the Davis-Bacon claim - a claim which only affects individuals that ACT does not represent. ACT simply has no legal right to insist upon the payment of damages to persons that lack <u>any</u> connection, much less a meaningful one, to ACT.

If back wages are awarded to individuals who performed work covered by the Agreement, notwithstanding the absence of any legal right to receive them and the absence of any party representing these individuals, ACT has no right to interfere with what would be a relatively routine process of calculating the amount of back wages. As will likely be more fully explained in USDOT's memorandum, the process of assigning wage classifications and rates for certain types of work is a task routinely undertaken by USDOT and the United States Department of Labor when contracts are prepared for bidding. Even though work has been on-going under the Agreement for over three years, the process of assigning wage classifications and rates is the same. NCI can provide available historical wage and work information to USDOT. Once USDOT classifies the hours and types of work performed by these individuals that can be identified based on historical records, calculation of back wages is simply a matter of math. This process can be worked out by

9

USDOT, WVDOH, and NCI. There is no reason why ACT or any third party consultant needs to be involved in this process. In the event an individual believes his wage rate or classification is wrong, the regulations establish an administrative process by which an individual can appeal. 29 C.F.R. § 5.11.

Besides the absence of any useful purpose for ACT's involvement, information concerning NCI's employees' wages constitutes confidential information that cannot be freely disclosed. Federal law expressly prohibits disclosure of such personal confidential information to third parties without consent. *See* 15 U.S.C. § 6802(a). Given the confidential nature of such information, these individuals would likely not want their wage history disclosed to unrelated third parties regardless of whether such disclosure were legally permissible.

C. **No Grounds for Issuance of an Injunction Against Further Work or Termination of the Agreement Have Been Established**

   1. **An Injunction Is Inappropriate Because ACT Has Not Demonstrated Irreparable Harm and an Injunction Will Cause Others to Suffer Harm**

An injunction is an "extraordinary remedy" that courts only sparingly grant through their equitable powers upon a showing of irreparable harm if the challenged conduct continues. "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). "The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Id.* In evaluating whether to issue an injunction, courts "balance[] the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Yakus v. United States*, 321 U.S. 414, 440 (1944).

ACT has made absolutely no allegation, much less an evidentiary showing, of how continuation of the work under the Agreement will cause it to suffer any harm, much less irreparable harm. There is no evidence that the legal remedies available to ACT are inadequate. This alone is reason to deny the request. Furthermore, as discussed below, stopping the work under the Agreement will cause harm not only to NCI and its employees, but the citizens of West Virginia and even ACT's purported members. No one will benefit from an injunction and there is no reason to issue one.

2. **Any Injunction in this Case Must Follow the Procedures Outlined in 29 U.S.C. § 107.**

The Norris LaGuardia Act, 29 U.S.C. § 101 *et. seq.*, substantially limits Federal Court jurisdiction to issue injunctions in cases "growing out of a labor dispute." 29 U.S.C. § 107. A "labor dispute" is defined in 29 U.S.C. § 113(c) as including "any controversy concerning the terms and conditions of employment." As relevant here, this case concerns wages, clearly a term and condition of employment. Moreover, this case is between NCI, an employer in the construction industry, and ACT, an association of employees, in the construction industry.

Section 107 contains specific requirements for granting an injunction in such a case as this one, none of which have been complied with. Indeed, even if the allegations of the Amended Complaint were taken as admitted, the mandatory requirement of § 107 would not be complied with. No injunction is thus available here.

3. **Termination of the Agreement is Inappropriate**

Nothing in the Davis-Bacon Act or the Federal-Aid Highways Act requires termination of a contract for failure of the applicable federal agency to include the required provisions. The statute cited by ACT in support of its request to terminate the Agreement, 30 U.S.C. 3143, is inapplicable for two reasons. First, this statute requires the applicable agency to include terms in contracts

11

subject to Davis-Bacon that allows the agency to terminate the contractor's right to proceed with work if the contractor fails to pay the "prevailing wages" <u>called for by the contract</u>. The statute does not allow for cancellation of a contract in the event a federal agency does not include a "prevailing wages" term in a contract. Again, the Agreement does not require payment of "prevailing wages" and naturally does not provide for cancellation in the event prevailing wages are not paid.

Second, even if such a term were in the Agreement, cancellation is not mandatory. The statute clearly gives federal agencies discretion on whether to terminate. "[T]he Federal Government by written notice to the contractor <u>may</u> terminate the contractor's right to proceed. . . ." 40 U.S.C. § 3143 (emphasis added). Under basic cannons on statutory interpretation, the word "may" customarily connotes discretion. *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 346 (2005). Nothing in the statute suggests the word "may" should be read to impose a mandatory duty to terminate a contract. ACT may not seek an order under the APA requiring USDOT to exercise its discretion in a certain way because ACT has not brought a proper mandamus action under 28 U.S.C. § 1361. Even if ACT had brought such an action, however, mandamus is not appropriate because USDOT has no mandatory duty to terminate the Agreement. "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (citations omitted). Under 28 U.S.C. § 3143, USDOT clearly has discretion whether to terminate a contract and mandamus therefore will not lie.

Aside from the absence of any statutory grounds for terminating the contract, such a drastic action will benefit no one while hurting many. This Court has already determined the no-bid procurement method is consistent with federal law. Thus, there is no reason to terminate the

12

Agreement so others can have an opportunity to bid on the project. Given the unique circumstances that allowed this project to be undertaken on a cost-effective basis, primarily NCI's control of the surface and mineral rights for the land on which the road is being constructed, no other party would be in a position to complete the project with the available funds. Termination of the project will only mean that no further work will be performed. No one, not even ACT, will benefit from this result. Termination will mean many NCI employees will likely be laid off and lose their source of income. Termination will mean the Red Jacket Section remains uncompleted for the foreseeable future after considerable state and federal funds have already been spent. Termination will deprive the citizens of West Virginia of the road that their tax dollars help fund and the economic benefits the road will bring to the entire State of West Virginia. Termination will likely hurt ACT's members as well since future paving and other work to finish the highway will presumably be open for bidding by union contractors. If the road is not completed, these projects will not be available for the employers of ACT's members to bid on.

Termination is also inappropriate because NCI has done nothing wrong. Nothing in the Agreement required NCI to pay "prevailing wages" and nothing in the Davis-Bacon Act or Federal-Aid Highways Act requires it to do so absent a contractual obligation. USDOT has responsibilities under Davis-Bacon and the Federal-Aid Highways Act - not NCI. Furthermore, there is no evidence that USDOT made a conscious decision to disregard the law. The Administrative Record makes clear that USDOT's decision to approve the Agreement without "prevailing wages" provisions was reached after considerable debate and based on a good faith interpretation of the law. NCI and USDOT freely admit "prevailing wages" were not paid - there is nothing nefarious about that fact despite what ACT may imply. The Agreement does not require payment of prevailing wages so NCI had no obligation to do so. Had the Agreement called for payment of "prevailing

13

wages" and NCI intentionally breached this duty, the regulations promulgated by the Department of Labor provide enforcement mechanisms and penalties. But that is not the case here. NCI abided by the terms of a contract that was blessed by USDOT.

Probably the most important reason why termination is not appropriate is that the problem can be fixed. As recognized in the September 5, 2007 Order, the Agreement provides for the parties to negotiate an amendment to the Agreement in the event "prevailing wages" are deemed required. There is no reason why this negotiation cannot take place. As discussed more fully below, this is the only appropriate remedy.

**D.  Ordering USDOT to Require an Amendment to Agreement Is the Only Appropriate Remedy for the Davis-Bacon Claim**

The only proper remedy is for this Court to order USDOT to take the necessary steps to ensure the Agreement is amended to include the contractual provisions called for by Davis-Bacon. The Agreement already provides for NCI and WVDOH to negotiate an amendment in the event NCI is not exempt from the requirements of Davis-Bacon. If these negotiations are successful, USDOT can and will see to it that the breach identified is remedied. USDOT administers hundreds of such contracts. It is fully capable of assigning wage classifications and rates to the types of work being performed under the Agreement. No outside consultant is necessary. If the parties can reach consensus on an amended Agreement, the individuals performing the work can then be paid "prevailing wages" into the future.

Nothing else can or needs to be done to remedy the flaw identified by the Court. NCI is not directly subject to the Davis-Bacon Act or the Federal-Aid Highway Act so NCI cannot be ordered to comply with either. Only USDOT can be required to comply with these statutes, and the only duty USDOT has under these statutes is to ensure the Agreement is amended to include the provisions called for by Davis-Bacon.

As discussed above, back wages are not available for the individuals who worked on the project - the Supreme Court has clearly so held. Even if such damages were available, ACT does not represent workers whose wages are in issue and has no standing to seek relief on their behalf or control the process by which any relief is granted.

As far as enjoining performance of the Agreement or terminating it, there are no legal grounds to do either. ACT has not demonstrated it will suffer any irreparable harm from continued performance of the Agreement. Nothing in Davis-Bacon or the Federal-Aid Highways Act requires termination and USDOT only has discretion to terminate a contract when a the contract itself calls for payment of "prevailing wages" and the contractor fails to do so. Plus, the infirmity of the Agreement identified by the Court can easily be remedied. An injunction against further work or termination of the Agreement would only serve to inflict harm on NCI, its employees, and the citizens and taxpayers of West Virginia and the United States as whole while benefiting absolutely nobody. No one is injured by continued performance of the contract - many will suffer harm if performance is halted. If ACT challenges any of these factual assertions, NCI requests an evidentiary hearing required by 29 U.S.C. § 107 on the issues of irreparable injury, balance of harm and public interest.

## V.
## CONCLUSION

For all the reasons recited above, the appropriate remedy for the Davis-Bacon claim is an order directing USDOT to take the necessary steps to ensure the Agreement is amended to include the provisions calling for payment of "prevailing wages" required by Davis-Bacon on a prospective

basis to all qualified "laborers and mechanics" performing work covered by the Agreement. A proposed Judgment Order is attached as Exhibit 1.

>Respectfully submitted,
>
>**Nicewonder Contracting, Inc.**
>**By Counsel**
>
>/s/ Robert M. Stonestreet
>Forrest H. Roles (WVSB # 3162)
>Robert M. Stonestreet (WVSB # 9370)
>DINSMORE & SHOHL LLP
>P.O. Box 11887
>Charleston, WV 25339-1887
>Telephone: (304) 357-0900
>Fax: (304) 357-0919

16

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**THE AFFILIATED CONSTRUCTION
TRADES FOUNDATION, a division of
the West Virginia State Building and
Construction Trades Council, AFL-CIO;**

      Plaintiff,

v.                                                                                                        **Civil Action No. 2:04-1344**
                                                                                                          **Judge John T. Copenhaver, Jr.**

**THE WEST VIRGINIA DEPARTMENT
OF TRANSPORTATION, Division of
Highways, THE UNITED STATES DEPARTMENT
OF TRANSPORTATION; THE WEST
VIRGINIA BOARD OF EDUCATION; THE
MINGO COUNTY REDEVELOPMENT AUTHORITY;
and NICEWONDER CONTRACTING, INC.,**

      Defendants.

### CERTIFICATE OF SERVICE

      I hereby certify that on December 3, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  The ECF system sends Notice of Electronic Filing to all filing users associated with this case as follows:

**W. Stuart Calwell**
THE CALWELL PRACTICE
500 Randolph Street
Charleston, WV  25302
scalwell@calwelllaw.com

**Jeffrey J. Miller**
WV DIVISION OF HIGHWAYS
Legal Division, 1900 Kanawha Blvd., E.
Charleston, WV 25305-0430
jjmiller@dot.state.wv.us

**Kelli D. Talbott**
OFFICE OF THE ATTORNEY GENERAL
State Capitol, Room W-435
Charleston, WV  25304
kelli.talbott@wvago.gov

**Vincent Trivelli**
THE CALWELL PRACTICE
178 Chancery Row
Morgantown, WV 26505
vmtriv@westco.net

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

**Charles B. Dollison**
BOWLES RICE MCDAVID GRAFF & LOVE
P.O. Box 1386
Charleston, WV  25325-1386

**Vaughn R. Groves**
ALPHA NATURAL RESOURCES
P.O. Box 2345
Abingdon, VA 24212

**Anthony G. Halkias**
WV DIVISION OF HIGHWAYS
Legal Division, 1900 Kanawha Blvd., E.
Charleston, WV  25305-0430

**Kelly R. Curry**
ASSISTANT UNITED STATES ATTORNEY
P.O. Box 1713
Charleston, WV  25326

                                                 /s/ Robert M. Stonestreet
                                                 Forrest H. Roles (WVSB # 3162)
                                                 Robert M. Stonestreet (WVSB # 9370)
                                                 DINSMORE & SHOHL LLP
                                                 P.O. Box 11887
                                                 Charleston, WV  25339-1887
                                                 Telephone: (304) 357-0900
                                                 Fax: (304) 357-0919

101418_1